IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER SENA,

       Plaintiff,

vs.                                         No. CIV 02-0290 RB/LAM

YVETTE HARAN, TODD FROATS,
RICHARD GARCIA and JOHN or JANE DOE
POLICE OFFICERS or POLICE SUPERVISOR
DEFENDANTS 1 through 10, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES AS
LAS CRUCES POLICE OFFICERS; THE CITY OF
LAS CRUCES, A Municipal Corporation in
The State of New Mexico; JOHN OR JANE DOE
GOVERNMENTAL ENTITY DEFENDANTS
1 through 10,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. 27), filed on December 2, 2002. Jurisdiction arises under 28 U.S.C. § 1331. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is well-taken in part and should be granted in part and denied in part.

**I.**       **Background.**

Plaintiff Sena filed her Complaint on March 14, 2002, alleging claims under 42 U.S.C. §1983 against the named police officer defendants and their supervisors for unlawful arrest and excessive force in violation of her rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution (Count I); as well as supplemental state law claims against the police officer defendants and the City of Las Cruces (hereinafter "City") under the theory of *respondeat superior*

for assault, battery, false arrest, false imprisonment and intentional infliction of emotional distress (Count II).

Sena alleges that on March 17, 2000, she was involved in an incident at an apartment complex on South Espina Street in Las Cruces, New Mexico. (Compl. ¶8.) Sena was inside an apartment that had been left under her care. (Compl. ¶9.) While a felony drug arrest occurred in an adjacent apartment, Sena observed the incident. (Compl. ¶10.) The named police officer defendants physically extracted Sena from the apartment left under her care and arrested her. (Compl. ¶11.) Sena further alleges that the individual defendants negligently held her in custody without justification and used excessive force when taking her into custody. (Compl. ¶¶ 13-14.)

In their Motion for Summary Judgment, Defendants argue that the individual officers are entitled to qualified immunity; that the City is not liable under §1983; that the City and its employees are immune from suit for intentional infliction of emotional distress, and that Defendants are entitled to summary judgment on the battery claim because the arrest was valid and the force used was objectively reasonable.

**II.   Facts.**

The following statement of facts is set forth in the light most favorable to Sena, with all reasonable inferences from the record drawn in her favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir. 1997). On March 17, 2000, Sena met her friend Cheryl Scales (hereinafter "Cheryl") for lunch at the Corbett Center on the campus of New Mexico State University. (Pl. Ex. 1, ¶ 2.) Sena and Cheryl planned to pick up Cheryl's sister, Natalie Scales (hereinafter "Natalie"), to go shopping. (*Id*.) Sena and Cheryl drove in Sena's car to Natalie's off-campus apartment. (*Id*.) As Sena pulled into the parking lot, Sena and Cheryl saw police cars outside of Natalie's apartment.

(*Id.*)

Defendant Froats had been dispatched to Natalie's apartment complex in reference to a stolen vehicle. (Def. Ex. A, ¶ 7.) The dispatcher advised Froats that the party who reported the vehicle stolen was in Apartment A-6 and that the vehicle, a black Suburban, had been driven away by a male subject. (*Id.*) Froats went to the address and made contact with two individuals; one was Natalie and the other was named Brandon. (Def. Ex. A, ¶ 8.) After arriving at the scene, Detective Gary Garcia radioed Froats that a Suburban had been repossessed by Roadrunner Repossession. (Def. Ex. A, ¶ 8.) Detective Gary Garcia soon confirmed that the vehicle that had been reported stolen was at Roadrunner Repossession. (Def. Ex. A, ¶ 9.) Froats shared this information with Brandon, and they proceeded Apartment A-6 to tell Natalie as well. (Def. Ex. A, ¶¶ 11-12.)

Upon entering Apartment A-6 with permission, Froats observed a cloud of smoke and a strong odor of marijuana. (Def. Ex. A, ¶12.) Froats observed a marijuana cigarette in plain view in a white tray on an entertainment center. (*Id.*) Froats asked Natalie what was on the entertainment center. (*Id.*) She replied nothing was up there, and tried to smash cigar tobacco on top of the marijuana. (*Id.*) Natalie confirmed that the apartment was hers. (*Id.*) Froats heard children crying somewhere in the apartment. (Def. Ex. A, ¶12.) Natalie advised Froats that there was no one else in the apartment. (*Id.*)

Around this time, Defendant Richard Garcia arrived and walked into Apartment A-6. (Def. Ex. B, ¶ 3.) Garcia noticed a strong odor of marijuana and heard children crying in the back rooms. (*Id.*) Garcia and Froats performed a protective sweep of the back rooms and discovered two small boys. (*Id.*) The boys were identified as Sexy and Notorious, the sons of Natalie. (*Id.*) Garcia and Froats also observed a bag of marijuana and two weighing scales. (Def. Ex. A, ¶12.; Def. Ex. B, ¶

3

4.)

Froats requested the assistance of Metro Narcotics and Children, Youth and Families Department (hereinafter "CYFD"). (Def. Ex. A, ¶12.) Around this time, Cheryl and Sena arrived at the apartment complex. (Def. Ex. B, ¶ 4.) Cheryl went straight to Apartment A-6, while Sena entered Apartment A-5. (Pl. Ex. 1, ¶ 2.) Apartment A-5 was leased to Sena's friend Lily, who had given Sena a key. (*Id*.) Cheryl came over and told Sena that the State was going to take away Natalie's two sons. (*Id*.) Cheryl asked Sena to please come over and help her calm the boys down until the social worker arrived. (*Id*.) Sena agreed, followed Cheryl to Apartment A-6 and sat with the boys on a couch. (*Id*.)

Froats and Garcia determined that Apartment A-6 should be secured pending the arrival of the Metro Narcotics Agents. (Def. Ex. A, ¶12; Def. Ex. B, ¶ 4.) The officers asked Cheryl and Sena to vacate the apartment and wait on the sidewalk outside. (Pl. Ex. 1, ¶ 2; Def. Ex. A, ¶12; Def. Ex. B, ¶ 4.) Sena and Cheryl complied.

Cheryl asked Sena if she could use the phone in Apartment A-5. (Pl. Ex. 1, ¶ 2.) Cheryl and Sena went into Apartment A-5 to use the phone. (*Id*.) Cheryl called her mother and went back outside. (*Id*.) Sena stayed inside Apartment A-5 and called her attorney. (*Id*.) Sena's attorney advised her to stay inside Apartment A-5. (*Id*.)

Defendant Garcia summoned Defendant Haran for assistance. (Def. Ex. C, ¶ 3.) When Haran arrived, Froats and Garcia asked Haran to watch the two children as well as Cheryl and Sena. (Def. Ex. C, ¶ 3.) Cheryl went back inside Apartment A-5 to use the bathroom. (*Id*.) Cheryl and Sena stayed inside Apartment A-5 and talked. (*Id*.) As Cheryl was leaving, Sena saw Haran talking to Garcia and pointing in Sena's direction. (*Id*.) Haran stated that Garcia was concerned that Sena

might be attempting to hide illegal substances in Apartment A-5 and requested that Haran keep Sena and Cheryl outside. (Def. Ex. C, ¶ 3.) Haran told Sena and Cheryl that they needed to leave Apartment A-5 and stand on the sidewalk. (*Id.*) Sena and Cheryl complied with Haran's instructions. (*Id.*)

After Natalie consented to a search of Apartment A-6 in writing, Froats and Garcia assisted Metro Narcotics in a more thorough search of that apartment. (Def. Ex. A, ¶12.) When the CYFD social worker arrived, Garcia asked Cheryl to turn over the children. (Def. Ex. B, ¶ 4.) Cheryl resisted. (*Id.*) Garcia and Haran advised Cheryl that she was being arrested for obstruction of justice. (*Id.*) Cheryl continued to resist. (*Id.*) After arresting Cheryl, Garcia put her in a police car and returned to Apartment A-6 to assist with the search. (*Id.*) While Garcia was searching the apartment, Haran advised him that Haran had experienced problems with Sena and that Haran had arrested Sena. (Def. Ex. B, ¶ 4.) Sena was arrested while Froats and Garcia were still in Natalie's apartment. (Def. Ex. A, ¶13; Def. Ex. B, ¶ 4.) Froats and Garcia did not participate or witness the arrest or the decision to arrest Sena. (*Id.*)

Sena and Haran offer sharply contrasting accounts of what transpired during Sena's arrest. Sena offers the following version in her Affidavit. (Pl. Ex. 1.) Sena asked a male officer if she could go back inside Apartment A-5 to use the phone. (Pl. Ex. 1, ¶ 2.) The male officer gave Sena permission to go back inside Apartment A-5. (*Id.*) Sena went back inside of Apartment A-5 and called her mother. (*Id.*) While she was on the phone, Sena heard Haran knocking on the front door. (*Id.*) Haran stepped inside and told Sena she needed to come back outside and sit on the sidewalk. (*Id.*)

Sena told Haran that Garcia had given Sena permission to use the phone and that Haran

5

needed to leave. (Pl. Ex. 1, ¶ 2.) Haran told Sena that Sena needed to leave Apartment A-5. (*Id*.) Sena went back into the apartment to hang up the phone. (*Id*.) Haran followed Sena, told Sena that Sena needed to leave, and that Sena was not allowed in the apartment. (*Id*.) Sena told Haran that A-5 was not Sena's apartment, that Haran could not be in the apartment, and that Haran needed to leave. (*Id*.) Sena told Haran that Sena had authorization to be in the apartment and that Sena had keys. (Pl. Ex. 1, ¶ 2.) Haran instructed Sena to come outside. (*Id*.) Sena felt threatened and went outside. (*Id*.)

Haran followed Sena outside. (Pl. Ex. 1, ¶ 2.) Sena reached back to close the door and Haran told Sena that Sena was under arrest for not listening. (*Id*.) Haran grabbed Sena's left arm. (*Id*.) Sena told Haran that Sena had a problem with her right shoulder. (*Id*.) Haran threw Sena on the ground and got her left arm behind Sena, but did not cuff Sena. (*Id*.) Haran and Sena stood up. (Pl. Ex. 1, ¶ 2.) Haran struck Sena on the right side of the jaw. (*Id*.)

Metro Agent Irene Paz ran over and threw Sena up against the wall and told Sena to stop trying to resist. (Pl. Ex. 1, ¶ 2; Pl. Ex. 2, p. 6.) Sena told Agent Paz about her right shoulder injury and Agent Paz relaxed her grip. (Pl. Ex. 1, ¶ 2.) Haran pushed Sena to the ground and Sena's head hit a pole. (*Id*.) Haran grabbed both of Sena's arms and cuffed them behind her back. (*Id*.) Haran squeezed Sena's injured right shoulder. (*Id*.) Sena told Haran to stop and that she was in pain. (*Id*.) Haran grabbed both of Sena's wrists and pulled her to her feet. (*Id*.) Sena's pants were scuffed and her shoe was broken. (Pl. Ex. 1, ¶ 2.) Haran escorted Sena to the sidewalk and told her to sit down and wait for an officer to transport her. (*Id*.)

Haran offers the following version of Sena's arrest in her Affidavit. (Def. Ex. C.) According to Haran, Sena entered Apartment A-5 after Haran had instructed her to stay outside. (Def. Ex. C,

¶ 3.)  Haran was concerned that Sena might be destroying evidence or posing a threat to officer safety.  (*Id.*)  Haran escorted Sena back to the sidewalk and asked her to sit down.  (*Id.*)  Fifteen or twenty minutes later, Sena got up, started to enter Apartment A-5, and tried to close the door.  (*Id.*)  Haran testified in her deposition that Sena slammed the door on Haran's hand.  (Def. Reply Ex. A, p. 20-21.)  Haran followed Sena and asked her to return to the sidewalk.  (Def. Ex. C, ¶ 3.)  Sena refused to obey Haran.  (*Id.*)  Haran told Sena that she was under arrest.  (*Id.*)  Sena struggled and resisted arrest.  (*Id.*)  Another officer assisted Haran in arresting Sena.  (*Id.*)  Sena complained of a prior shoulder injury.  (*Id.*)

Sena states that after she was taken to the police station, she was kept in handcuffs for a prolonged period.  (Pl. Ex. 1, ¶ 2.)  While Froats, Garcia and Haran were doing paperwork, they left Sena's hands cuffed behind her back.  (*Id.*)  Natalie asked Froats whether an officer was required to step in and stop abuse by another officer.  (*Id.*)  Froats walked in front of Sena's cell and asked her in a raised voice "What? Are you saying that we used excessive force? Huh?"  (*Id.*)  After asking Natalie a similar question, Froats stormed out of the room.  (*Id.*)

Sena informed Natalie that her arm hurt and was swelling.  (Pl. Ex. 1, ¶ 2.)  Natalie asked Garcia to take off Sena's handcuffs.  (*Id.*)  Garcia asked Sena if she wanted to go to the hospital.  (*Id.*)  Sena refused.  (*Id.*)  Paramedics arrived to check on Sena's injuries.  (*Id.*)  After the paramedics asked why Sena was still handcuffed, Garcia removed Sena's handcuffs.  (Pl. Ex. 1, ¶ 2.)  The paramedics asked Sena if she wanted to go to the hospital.  (*Id.*)  Sena told them that she would go to the hospital after she was released.  (*Id.*)  Sena was photographed either at the police station or at the jail and she showed no signs of obvious injury.  (Def. Reply Ex. B.)

After the paperwork was finished, Sena was taken to jail and charged with resisting or

obstructing an officer. (Pl. Ex. 1, ¶ 2; Pl. Ex. 2, p. 5.) Early the next morning, Sena was released from jail. (*Id.*) After retrieving her car and resting, Sena went to the hospital on the afternoon of the day of her release. (*Id.*)

### III.     Summary Judgment Standard.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (*quoting* Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue

for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*  The district court may only consider admissible evidence submitted to defeat summary judgment. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995).

**IV.    Analysis.**

**A.    Whether Defendants Haran, Froats and Garcia are Entitled to Summary Judgment Based on Qualified Immunity.**

A government official is entitled to qualified immunity from civil damages when his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court clarified the qualified immunity analysis in *Saucier v. Katz*, 533 U.S. 194 (2001). The first question in the *Saucier* analysis is whether "[t]aken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 201. If a court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the defendant's alleged unlawful conduct. *Id*. Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

### 1. Sena's Unlawful Arrest Claim.

Sena alleges that Defendants Haran, Froats and Garcia violated her Fourth Amendment right to be free from an unlawful arrest. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The constitutional validity of a warrantless arrest is analyzed under a probable cause standard. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). A police officer's warrantless arrest is permissible if the officer has probable cause to believe that the person he or she is arresting has committed or is committing a crime. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Probable cause exists only if the facts and circumstances within the arresting officer's knowledge, and of which he or she has reasonably trustworthy information, are sufficient to lead a reasonably prudent person to believe that the arrestee has committed or is committing an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998).

When a warrantless arrest is the subject of a §1983 claim, the arresting officer is immune from suit if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. *Hunter*, 502 U.S. at 227; *Baptiste*, 147 F.3d at 1256 (*quoting Romero*, 45 F.3d at 1475). A law enforcement official who "'reasonably but mistakenly

10

conclude[s] that probable cause is present'" is entitled to qualified immunity. *Hunter*, 502 U.S. at 227 (*quoting Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The primary question therefore is whether, based on the facts and circumstances known at the time of the arrest, a reasonable officer could have believed that there was probable cause to arrest the plaintiff.

Under the *Saucier* analysis, facts must be construed in the light most favorable to the plaintiff in determining whether the plaintiff has alleged a violation of a constitutional right. *Saucier,* 533 U.S. at 201. Taken in a light most favorable to Sena, the facts of record gave Haran, Froats and Garcia no indication that Sena was involved with drugs or was dangerous. Sena did not try to prevent the officers from taking custody of the children. Sena avers that she had permission from a male officer to return to Apartment A-5 to use the telephone. Although Defendants have submitted evidence indicating that Sena obstructed or resisted Officer Haran, Sena has submitted evidence that she was complying with Haran's instructions when Haran decided to arrest her. Consideration of the record in the light most favorable to Sena leads to the conclusion that Sena was arrested without probable cause. Sena has satisfied the first element of *Saucier* because she has asserted a violation of her Fourth Amendment right to be free from an unlawful arrest.

The second inquiry under *Saucier* is whether the law was clearly established as of the date of the incident. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000). On March 17, 2000, it was clearly established that a police officer violated an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer made a warrantless arrest without probable cause. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312

11

(10th Cir. 2002) (*citing Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Sena has alleged a violation of a constitutional right that was clearly established on the date of the incident. Thus, Sena has satisfied the two prongs of *Saucier* with respect to her unlawful arrest claim.

In order to obtain summary judgment after the plaintiff has satisfied the *Saucier* requirements, the defendant must meet the traditional burden of showing that there are no genuine issues of material fact. *See Albright*, 51 F.3d at 1535. When applying the summary judgment standard, the court must examine the record and make all reasonable inferences in the light most favorable to the non-moving party. *See Simms*, 165 F.3d at 1326.

Construed in a light most favorable to Sena, the facts indicate that Sena was not involved with the drugs, was not dangerous, and did not interfere when Garcia took custody of the children. According to Sena, a male police officer gave her permission to return to Apartment A-5. (Pl. Ex. 1 ¶ 2.) When Haran told Sena to leave the apartment, Sena complied. (*Id.*) Sena admits that she offered verbal explanations, returned to hang up the phone and reached back to close the door to apartment A-5. (*Id.*) When viewed in the light most favorable to Sena these factors do not negate the conclusion that Sena was complying with Haran's instructions and that Haran wrongly decided to arrest Sena for resisting or obstructing an officer. (*Id.*)

Sena's version of events and Haran's version of events cannot be reconciled without evaluating the truthfulness of each. In a civil suit, probable cause is a proper issue for the jury if there is room for a difference of opinion. *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990). In this case, there is room for a difference of opinion as to what transpired when Haran arrested Sena. The finder of fact at trial must reconcile the differing versions to determine if Haran had probable cause to arrest Sena. Defendants' motion for summary judgment based on qualified immunity with respect

to Sena's Fourth Amendment unlawful arrest claim should be denied.

### 2. Sena's Excessive Force Claim.

Claims of excessive force are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The permissibility of a particular law enforcement practice is judged by balancing its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Graham*, 490 U.S. at 396; *Holland v. Harrington*, 268 F.3d 1179, 1190 (10th Cir. 2001). The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer at the scene: recognizing the fact that an officer may be forced to make split-second judgments." *Graham*, 490 U.S. at 396-97. The factors employed to determine reasonableness are the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *Latta v. Keryte*, 118 F.3d 693, 701 (10th Cir. 1997). Physical injury is not required for force to qualify as excessive, *Holland*, 268 F.3d at 1195, and the defendant's subjective intent is not a consideration. *Graham*, 490 U.S. at 397.

In analyzing whether the plaintiff has alleged a violation of a constitutional right, the facts must be assessed in the light most favorable to the plaintiff. *Saucier*, 533 U.S. 201. Sena has submitted evidence that she informed Haran that she had a preexisting right shoulder injury. (Pl. Ex. 1, ¶ 2.) Sena avers that Haran threw her to the ground, struck her right jaw, pushed her to the ground and hit her head on a pole. (*Id.*) Sena further asserts that when Haran cuffed Sena's hands behind her back, Haran squeezed Sena's injured right shoulder, and pulled Sena to her feet. (*Id.*) After she was confined in a cell at the police station, Haran, Froats and Garcia left Sena's hands cuffed behind her back until the paramedics asked Garcia to remove them. (*Id.*) Sena avers that Froats menaced her while she was confined in a cell. (*Id.*) The crime at issue was a misdemeanor,

Sena did not pose an immediate threat to the safety of the officers, and she was not physically resisting arrest. *See Latta*, 118 F.2d at 701. Taken in the light most favorable to Sena, the facts establish that the conduct of Haran, Froats and Garcia violated Sena's constitutional right to be free from excessive force. *Saucier*, 533 U.S. at 201. Sena has satisfied the first *Saucier* inquiry with respect to her excessive force claim.

The second *Saucier* inquiry is whether the law was clearly established in light of the specific context of the case. *Saucier*, 533 U.S. at 201. The Fourth Amendment excessive force standard was clearly established on the date of the incident. *Dixon v. Richer*, 922 F.2d 1456, 1462 (10th Cir. 1991). Moreover, the contours of the right were sufficiently clear so that a reasonable officer would understand that what he was doing violated that right. *Saucier*, 533 U.S. at 202. The qualified immunity doctrine acknowledges that reasonable mistakes can be made as to the legal constraints imposed on police conduct. *Id*. However, given the specific context of this case, a reasonable officer would have been on notice that treatment of a suspect in accordance with the facts taken in the light most favorable to Sena crossed the "'hazy border between excessive and acceptable force.'" *Saucier*, 533 U.S. at 206 (*citing Priester v. Riviera Beach*, 208 F.3d 919, 926-927 (11th Cir. 2000)). Construed in the light most favorable to Sena, the facts of this case would not permit an officer to have a reasonable misunderstanding as to what the law allowed. Plaintiff has satisfied both prongs of *Saucier* with respect to her excessive force claim.

After Sena satisfied the second prong of *Saucier*, Defendants assumed the traditional summary judgment burden of establishing that there are no genuine issues of material fact in dispute as to the excessive force claim. Material facts remain in dispute that must be resolved by the fact finder at trial. Accordingly, Defendants' motion for summary judgment based on qualified immunity with respect

to Sena's excessive force claim should be denied.

**B.     Whether Defendants Froats and Garcia are Entitled to Summary Judgment on Sena's Direct Constitutional Claims.**

Defendants Froats and Garcia argue that they are entitled to summary judgment because they were not personally involved in the alleged constitutional violations. In order to establish liability under §1983, the plaintiff must show that an affirmative link exists between the constitutional deprivation and either the defendant's personal participation, his exercise of control or direction, or his failure to supervise. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

Sena alleges in her Complaint that the named police officer defendants extracted her from her friend Lily's apartment. (Compl. ¶11.) Froats and Garcia submitted affidavits stating that they were not present during Sena's arrest and were not involved in the decision to arrest her. (Def. Ex. A, ¶13; Def. Ex. B, ¶ 4.) Sena's affidavit does not address whether Froats and Garcia were involved in her arrest. In this respect, Sena's affidavit is inconsistent with the Complaint. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (where conflict between testimony and affidavit creates a sham issue, affidavit may be disregarded). Courts may not resolve disputed questions of material fact in order to grant summary judgment. *Frohmader v. Wayne*, 958 F.2d 1024, 1027 (10th Cir. 1992). In any event, Sena states in her affidavit that Froats and Garcia kept her hands cuffed behind her back at the police station and that Froats behaved in a menacing manner. (Pl. Ex. 1, ¶ 2.) Under these circumstances, Froats and Garcia are not entitled to summary judgment on Sena's direct §1983 claims.

**C.     Whether Defendant City is entitled to summary judgment on Sena's municipal liability claims.**

Defendants assert that Sena's claims against the City should be dismissed because the

15

Complaint fails to allege that the allegedly unconstitutional actions were taken pursuant to a municipal policy or custom. A careful reading of the Complaint reveals that Sena alleges that the City is liable under a theory of *respondeat superior*. A municipality cannot be held liable under § 1983 based on the doctrine of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, a local government may be held liable for actions that unconstitutionally implement or execute a policy statement, ordinance, regulation, or decision that has been officially promulgated or adopted by that body's officers or for constitutional deprivations based on governmental custom, even though not formally approved by the body's decision-making channels. *Monell*, 436 U.S. at 690-91.

In order to establish municipal liability under § 1983, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipality." *See Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986)). The Complaint does not allege the existence of a City policy, practice or custom that permitted unconstitutional arrests or the use of excessive force.

Local Rule 56.1 requires that a party responding to a motion for summary judgment identify with particularity the material facts presented by the moving party as undisputed that the responding party contests are disputed. Sena's responsive brief fails to meet the requirements of Local Rule 56.1. Sena's response to the merits of the motion for summary judgment on the issue municipal liability is limited to the arguments of counsel that Haran failed to follow policies and practices promulgated by the City. (*See* Plaintiff's Response in Opposition to Defendant's [sic] Motion for Summary Judgment, p. 8, Doc. No. 35.) Arguments of counsel in response to a motion for summary judgment are insufficient to raise an issue of material fact. *Fritzscke v. Albuquerque Mun. Sch. Dist.*, 194 F.Supp. 2d 1194, 1206 (D. N. M. 2002). Sena's arguments with regard to Haran's alleged failure

to follow City policy and practice are insufficient to raise a material factual dispute to defeat Defendants' properly supported motion for summary judgment.

Moreover, an alleged failure by Haran to follow policy and practice on one occasion is not germane to the issue of whether her actions were representative of an official policy or custom of the City. Sena has offered nothing that would indicate that any of the challenged actions were authorized or ratified by the City. The City of Las Cruces is entitled to summary judgment on Sena's §1983 claims.

**D.      Whether Defendants are Entitled to Summary Judgment on Sena's State Law Claims for Intentional Infliction of Emotional Distress and Battery.**[1]

Defendants argue that the City and its employees are immune from suit for intentional infliction of emotional distress, relying on *Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 16 P.2d 1084 (2001). *Garcia-Montoya* upheld the district court's conclusion that state employees were immune from suit for intentional infliction of emotional distress. *Garcia-Montoya*, 130 N.M. at 43, 16 P.2d at 1102. Sena failed to respond to this argument as required by D.N.M.LR-Civ. 7.1(b). Sena has offered no material facts in opposition to the motion. Sena's response is insufficient to defeat Defendants' motion for summary judgment on this issue. *See Anderson Liberty Lobby, Inc.*, 477 U.S. at 248-49. Defendants are entitled to summary judgment on Sena's claim for intentional

---

[1] Sena's claims for assault, false arrest, and false imprisonment are not addressed because they were not raised in the motion for summary judgment.

infliction of emotional distress.

Defendants argue that they are not liable for battery because any force used was justified. Under New Mexico law, a battery is an unpermitted contact. *Sanford v. Presto Mfg. Co.*, 92 N.M. 746, 747, 594 P.2d 1202, 1203 (Ct. App. 1979), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001). In attempting to make an arrest or preserving the peace, a police officer is entitled to use such force as is reasonably necessary under all the facts and circumstances of a case. *Mead v. O'Connor*, 66 N.M. 170, 171, 344 P.2d 478, 479 (1959).

It is undisputed that Sena informed Haran that she had a preexisting right shoulder injury. (Pl. Ex. 1, ¶ 2.) Sena states in her affidavit that Haran threw her to the ground, struck her right jaw, pushed her to the ground and hit her head on a pole. (*Id.*) Sena has submitted evidence that Haran squeezed Sena's injured right shoulder, and pulled her to her feet. (*Id.*) Construed in the light most favorable to Sena, the non-moving party, Sena has presented sufficient evidence to create a genuine factual dispute on a material matter as to her claim for battery under state law. Accordingly, Defendants' motion for summary judgment should be denied with respect to the battery claim.

**V.   Conclusion.**

Material issues of fact preclude summary judgment based on qualified immunity in favor of Haran, Froats and Garcia. The City of Las Cruces is entitled to summary judgment on Sena's §1983 claims. Defendants are entitled to summary judgment on Sena's state law claim for intentional infliction of emotional distress. Material issues of fact preclude summary judgment with respect to Sena's state law claim for battery.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 27), filed on December 2, 2003, is **DENIED** with respect to the individual Defendants' assertion of qualified immunity and with respect to Sena's supplemental claim for battery.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Sena's §1983 claims against the City of Las Cruces and with respect to Sena's supplemental claim for intentional infliction of emotional distress.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**